May it please the court, Samuel Kornhauser on behalf of the appellant, John Heineke. I'd like to reserve five minutes for rebuttal. This is another abuse of discretion case. We believe that the district court abused its discretion by denying the motion for preliminary injunction, by failing to apply what's been set out by the Ninth Circuit at least three times with regard to a situation as ours where the Professor Heineke is being denied his right to pursue his chosen profession. The Arizona Dream Act case, the Einhardt case, the Chalk case. I think Chalk is, if you change the names, it could be from Chalk to Heineke, we'd be talking about our case. In that case, a teacher was diagnosed with AIDS. The school board prevented him from teaching. That was his chosen profession. They denied his request for a preliminary injunction to be allowed to continue to teach to find out whether there was... Well, you're applying those cases, but what about the Sampson case and many other cases that appear to indicate that if a person is temporarily suspended, that that's not the type of injury that's considered irreparable harm? Well, Your Honor, respectfully, Sampson, there wasn't a temporary suspension, and that was a, my recollection is the plaintiff was on temporary, was a temporary employee, so there wasn't any expectation. Probationary. I'm sorry? Probationary employee. Probationary, I'm sorry. There wasn't any expectation or promise of continued employment or, in this case, Professor Heineke's a tenured professor. He's been there for 40 years. He's got a promise that he can only be removed for extraordinary cause. There wasn't any extraordinary... How is that not compensable through money damages? That's what I don't understand. Well, that's what Chalk says. That's what Arizona Dream Act says. If you've got a job and it's the joy of your life, that's something that isn't compensable. Money doesn't make up for losing the ability to pursue your job or your career, and money just doesn't cut it. He's not doing this... This is, but in this case, through a lawsuit, the professor might be able to get his job back. It's not a permanent... No, Your Honor. It's not some kind of permanent loss. Well, of course it is. He's 79 years old. He loses his job. He has to go out in a job market at 79 years old, being terminated for alleged sexual harassment that he didn't do. Can I ask a question? There's no chance... What is the current state of the proceedings here? The current state of the proceedings is that Judge Koh said... No, I'm not talking about that. I'm talking about the university proceedings. There's an internal appeal... Which is still pending. Which is still pending, but we're concerned that there's no way to really get... First of all, whatever happens in that internal appeal, it has no jurisdiction over his age discrimination claims, his breach of contract claims, his damage claims, his injunctive... Even if the Faculty Judicial Board somehow said, yes, we're going to reinstate you, Santa Clara University can appeal to itself, its Board of Trustees, and they can affirm or... Do we know when that proceeding is going to conclude? It's supposed to start next Monday. I'm sorry, on the 19th. What does start mean? That there's supposed to be a hearing before the Faculty Judicial Board. Which is of a factual character, or is this an appeal? Well, it's an appeal from the President's determination that Professor Heineke should be terminated. They've suspended him, so they've already decided the case. He's been precluded from teaching, which under chalk, Einhard, is irreparable harm, for over six months now. And there's a hearing that's scheduled before this Faculty Judicial Board that we've been running around about. They won't allow us to call all the witnesses. But it's an evidentiary hearing. I'm sorry? It's an evidentiary hearing. Yes, it is, supposedly. And is there any projection of how long it's supposed to take? It's supposed to take three days. I see. So, Your Honor, all the criteria, we believe, all the criteria for issuing this preliminary injunction have been met. Respectfully, Judge Koh misapplied the law. We believe the law is set forth in this circuit, not in the First Circuit in the Brown case, Bagley v. Brown, which the District Court seemed to rely on. And, Samson, with regard to Your Honor's question, Samson was, I believe, a 1969 or 70 case. Einhard, Arizona, Chalk, this Court has all, three times at least, said, hey, it's an individual issue. Enyart involved a bar exam, correct? I'm sorry? Wasn't Enyart involving a bar exam? It was. An attorney? Yeah. Right, not an employment case like this. Well, it was. This was a person who would be completely unable to become a lawyer. That's more my point, Your Honor. Well, that's more like irreparable harm than what we have here. How do you ever give someone that remedy of the opportunity to become a lawyer? Here, the professor could be rehired. There was nothing to show that she couldn't become a lawyer. She was going to take the test. As before she took the test, she wanted an accommodation. The Court said that would be irreparable harm not to give her the accommodation because she might be precluded from taking the bar. There wouldn't be anything to preclude her from taking the bar exam a second or third time, but the Court felt that it would be irreparable harm if she was precluded from having an accommodation, failed the test, and that would be damage to her reputation, completely contrary to what the Sampson case was that said harm to the reputation isn't irreparable harm. The Ninth Circuit says it is. And that was followed by Arizona Dream Act that said that severe emotional distress. It's not a very close analogy. Chalk is much better. I think chalk is on point. I think the EEOC v. Chrysler, a case out of the Sixth Circuit, that was an Eastern District of Michigan case where an employee claimed he was terminated because of age. He was asked for an injunction, and the Court allowed it because there was no reason not to give him a preliminary injunction until there was a final determination as to whether or not there was discrimination. But it might be helpful to be a little more specific about what you think the irreparable harm is here. It's not money. You say it's reputation. The problem with that is I don't know how this is going to fix his reputation. No. It's not just reputation. It's the loss of the ability to pursue his career. Right. But I'm just – that's why I'm trying to be specific. It's not – excuse me. I'm sorry. Sorry. But you do use the term reputation in your briefs. And I just – it seems to me that if he were temporarily put back to work on the order of the Court, no one's – it's not going to change anybody's view of his reputation, right? Well, I don't agree with that. It's not – first of all, it's – Why? Well, because if he's put back – the fact that he's suspended or terminated, everybody in the university, all his colleagues, the whole community that he lives in, thinks that there's merit to this accusation. He sexually harassed somebody. Right. And if he's put back to work temporarily, that's not going to prove otherwise. Well, sure it is. He's back. And people are waiting to find out if he really did, especially in today's society. I mean, what's going on today? An accusation is made. Somebody's reputation is destroyed until – unless and until they can prove that it's wrong. But you would add to that that the – essentially that this kind of employment, i.e., university professor or maybe any teacher, has its own sort of satisfactions and life-affirming nature, which is being interfered with. And that – I mean, the woman in Samson was a program analyst or something. Well, our argument is it isn't just reputation. It's the loss of the opportunity to pursue your job, what you get tremendous satisfaction and joy and pleasure out of. That's what he's been doing. Counsel, was there any evidence of that in any of the affidavits that the appellant submitted? I mean, in Chalk, Judge Poole said, his closeness to the students and his participation in their lives is a source of tremendous personal satisfaction and joy to him. But I don't remember seeing any of that in any of the proof submitted to the district court. It was in his – repeatedly in his declarations. He said he – in fact, he talks about how he mentors him. There was a three-paragraph declaration that was submitted to the district court, and he didn't talk about his personal satisfaction or any irreparable damage. There are two motions for preliminary injunction. I believe in the first one he did talk about it. I think it was a 40-paragraph declaration. In the second appeal, from the denial of his preliminary injunction, he elaborated on that. He talked about all the work he does mentoring his students. It's a very specialized part of the business school. It's an MBA for analytics and statistics, and they deal with Silicon Valley companies. And part of his job and part of what he does is he shepherds these students through the program and gets them jobs with Silicon Valley firms, and that's a big part of it. Where is the declaration that you're talking about? I've looked at two so far, and I don't see one. I see one which was an exhibit to the complaint, and I see one called supplemental declaration in support of motion for TRO. Is there another one? There's the second. On the time that I reserved, I'll find you the citation. Well, what I find, Mr. Kornhauser, is that there's a declaration prepared but not mentioned. It talks about teaching is my joy and passion is my profession. I have devoted 40 years to pursuing it, but that doesn't appear to have been filed. Your Honor, it was, and on the second motion for preliminary injunction, it's been joined with the first appeal. So you say this was filed on the first appeal, the first motion? It was filed, yes. Both of them were. There was a supplemental declaration. I'll get you the citation to that. Did you do that? Yes. I apologize, Your Honor. So, well, with regard to the balance of harms, and there's absolutely no harm to the university. He's having, he's being. Well, that seems difficult. I mean, if, again, given the current atmosphere, if you have a person who's been not only accused but found guilty of sexual harassment of a student, there's obviously some harm to the university in having him in a classroom, no? Well, not if it's not true, and he's offered. Of course, but that's the question, not the answer. But, Your Honor. But he's been, so far, he's been found guilty or responsible up to this point. There hasn't been any finding. There's an investigation by a, what we believe is not an independent investigator based on a lack of evidence. You've got, you've got, we submitted evidence by the accuser, Ms. Zhang's own e-mails, 15 times. She requested to meet with him in person. I know, but am I not correct that the investigation concluded that he had done this and that the termination was based on that result? That's supposedly true. That's right. Okay. Well, what we question, I believe that that's not the real motivation. But, yes, that's the excuse that they used. I'm just looking at it from the university's point of view at this point in time. Well, Your Honor. I understand that he's fully entitled to contest that and is going to. And I understand you're very skeptical of the university's bona fides in looking into this. But, nonetheless, if we're going to be fair about what the current state of the situation is, we have to. But that's what I'm trying to say, Your Honor. If it turns out that he's right, then he's lost his job, he's lost years. It's not like he's 35 and some spring chicken. He's 79 years old. He doesn't have that many years to teach. If that's the joy of his life, somebody said to me, you can't be a lawyer anymore for improper reasons, and I enjoy what I'm doing, that's irreparable harm. Now, the district court only found an absence of irreparable harm. Did it ever do any other balancing with regard to the – it never made a finding with regard to likelihood of success. Did it ever make a finding as to the university's interests? No. It made – it limited its – Judge Koh limited her decision to – she didn't think that losing your job or being deprived of the opportunity to teach was irreparable harm. And she left it at that. And we believe that it's clear. And just to answer your question, Your Honor, the balance of harm, if it turns out that he's right and he didn't sexually harass Ms. Zhang, then he's lost his job. He might be dead by the time this whole proceeding is over and never gets – But we're not up to that yet. You see, that's part of the problem here. So far he's suspended. He hasn't lost his job. There's two semesters already – I'm sorry, two quarters already that he hasn't been able to do his job. All right. You're over your time. I'll give you a minute in rebuttal. Thank you. Thank you. Wait, I'm sorry. What did you say? I'll give you a minute in rebuttal. Thank you. Thank you, Your Honor. May it please the Court, Don Willenberg of Gordon and Reese for Santa Clara University and Jane Doe. This Court should not stop a university from suspending a professor pending administrative review of sexual harassment claims. The United States Supreme Court, this Court, and others have all held that economic harm and damage to reputation are not irreparable harm in the context of enjoining – Well, Samson, it seems to me, does not go as far as you're saying. It was a purely – first of all, she was a temporary employee. She had purely a procedural argument. She didn't have the kind of reputational interest that is at stake here, and she also didn't have – and maybe this is elitist or something, but the kind of job she had didn't seem like the kind of job in which just the inherent obstruction of being able to do the job is an injury. And so – and also, aren't there – well, first of all, why don't you respond to that? Why aren't all those distinctions such that, given chalk in this Court, we certainly can't say that there is an overall preclusion of ever finding irreparable harm in the job? There is not. That is correct, Your Honor. I will point out that what the Court said there was that even if she had strong evidence of all those things, that would still fall far short of what was necessary for an injunction, because those are the kind of things that are external factors common to most discharged employees, and that's exactly what happened here.  Kagan's case is that this is a case that's been re-regarded as a personal, moral attack than most people would. That's number one. They wasn't just fired for being incompetent, or fired for some other reason, but he was fired because he did something, you know, that we all consider, you know, a really bad thing to do, and he says he didn't. That is an interest right there, no? He hasn't yet been fired. As we pointed out, one of the differences between this case and the three cases on which counsel most relies is that this case involves suspension, in fact, a paid suspension. Suspension is by definition temporary, and yes, later this month there will be a evidentiary hearing that's presently set for at least three days at which this will all get decided, and then there will be presumably further proceedings at the district court. But all the Ninth Circuit cases that he cited, they don't involve suspension. There was nothing temporary about the denial of access to the bar exam in Enyart. There was nothing temporary about the non-teaching new job in Chalk, which is one big distinction between this case and that case. And there was certainly nothing temporary about the denial of driver's licenses in American Green. Kagan. He'll have a better argument once he's actually terminated? He will have a different argument, yes. And again, Sampson, and for that matter Harticke, which this Court also decided, which was not in the specific probationary, I won't say elitist, but the kind of employee that we were talking about in Sampson, and Harticke, this Court adopted the Sampson rationale and said that, yes, we're going to apply Sampson in other cases as well. And there, there was a – it was a bad decision. It was likely to have resulted in amending the exempel that was introduced  The greater extent of whose terms are not — which case are we talking about now? Harticke, A-T-R-T-I-K-K-A. This Court reversed and ordered enjoyable nonhonorable military discharge in the administrative review, even though the Court recognized that that would not just be termination. That's termination plus a scarlet letter. Well, that sounds a lot like this case, doesn't it? He's thinking this would be termination plus a scarlet letter. And the Court reversed an injunction. I mean, I — the problem is that I — I mean, for example, I know of, although I don't have them in front of me, a pretty large number of injunctions in cases in joining termination where a — of a group of employees because of a threatened termination, retaliatory termination. There are several different injunctions that I — that do that, and I don't think that's particularly unusual, the notion being once they're terminated, the retaliatory motive has been accomplished. So this is at least more nuanced than has appeared so far in this case, it seems to me. And the question is why — I mean, I would be a lot more comfortable with this if the district judge had, A, looked at matters at the whole mix of issues dealing with harms in this case, i.e., to the university, to the public, and so on, and, two, had taken a look at the merits. I mean, to truncate the whole inquiry this way means that it is essentially a per se ruling, and the per se ruling doesn't seem to stand up to the case law, does it? Well, I think the per se ruling does, because all it's been that — that we hear as claims for the irreparable harm are stigma and, we've heard, loss of the joy and ability to pursue one's profession. Well, that's going to be true, again, in almost every single employment case. Right? If those were the — Then you go on to the rest of the case, the rest of the preliminary injunction factors, which is not what's going on here. If those were — if those were — Every time you knock down a building, isn't that irreparable harm? If you're going to knock down the building the next day, can somebody come in and say, you can knock down the building the next day, I'm going to have irreparable harm? Why is that irreparable? Buildings are irreparable. You can build a building that's irreparable. Well, I can assure you that if somebody comes in and says that you better — that I'm going to have irreparable harm because you're going to knock down my building, you wouldn't — you might say you don't have a case, but you wouldn't say you don't have irreparable harm. Again, if these were — if these factors were enough, and as counsel's advancement, they are as supposedly as a matter of law grounds for an injunction, then instead of being the exception, injunctions would be the rule, right? We'd be seeing them all the time. And the idea that stigma alone ought to be enough can almost never be true. And part of the reason for that is because even the fact that an investigation is happening causes a stigma. So if he's saying that, well, there's stigma, so that allows me to enjoin a suspension, I suppose, and then the next step is, well, you can't even investigate me because that would be some kind of stigma. And further, let's think about this. The worst — the stigma is because of — or the stigma is worse in relation to how bad the charged acts are. So if stigma alone justified an injunction, then the people who were actually guilty of the worst bad acts would be the ones most entitled to an injunction. And there's no case that says that. Mr. Connolly, part of the argument, I think, for Professor Heineke here is also his own facts — in other words, his age, his seniority, the fact that for him to be suspended at this time and not be able to work presents more of a harm to him because he may never be able to come back again. How does that fit into this? Doesn't that make this more of an irreparable harm situation than if you had, let's say, a younger person who was earlier in their career and could come back after the litigation was over? There's no guarantee that Dr. Heineke would ever be able to return to his profession. Well, I'd say no for a couple of reasons. One, let's compare this to Enyart. In Enyart, the problem about not being able to pursue the profession was that she couldn't ever pursue that profession unless she got the bar card. It hadn't happened yet. Right. I mean, what I'm saying is that she hadn't failed. If she failed the bar exam, and we're talking about a second bar exam, it would be one thing, but that wasn't true. As I recall, she actually had failed it once and was retaking it. But the difference between that case and this case, it is that this suspension doesn't mean that Professor Heineke can't be a professor of economics anywhere. He just can't be a professor of economics here. Well, excuse me. I mean, that really is the most least believable part of your case. There may not be a declaration saying that he can't get a job. We all know he can't get a job. Well, it is evident. Has anybody ever hired a 79-year-old professor of economics who has been discharged for sexual harassment? I don't know that we have evidence of that. We've been hired one way or the other, to be honest with you. But I don't know that this is a distinction. I don't need a declaration to tell me that. Okay. How do you distinguish the case of Chalk, which Mr. Kornhauser says is right on point? Well, Chalk is pretty close. And I said that in the brief, and I agree. And I guess I would say a couple of things about Chalk. One is I don't think it ever addressed Sampson, which is unfortunate. Another is that it is inconsistent with Stanley, another decision by this Court where someone tried to get an injunction to get actually her job back, and the Court approved denial of that injunction, and she argued all the same things. I really love my job. I'm really good at it. The kids need me. I'm stressed about having to deal with this issue. And the Court said, no, you aren't required to have an injunction there. I'd also point out that in Chalk, the only argument against irreparable harm that appears in the – oh, I'm sorry. I have that wrong. I'm thinking of another case. I would say that the thrust of the Chalk decision wasn't about the irreparable harm. If you read the case, the thrust of that is on likelihood of success on the merits, which perhaps goes to Judge Berzon's point about maybe we would have liked Judge Berzon to go a little further on that. The thrust of Chalk was not involving irreparable damages? It wasn't – most of Chalk was about what was his likelihood of success on the merits. It did – it does get to the point about irreparable harm. That's exactly the problem here, is that we don't have that determination. And instead, we have essentially a per se ruling about the irreparable harm. It seems to me, for one thing, that the irreparable harm might be influenced by your view as a merits. If you really thought that he had a pretty good case of the fact that he was being set up here and didn't really do it, you might look at the irreparable harm differently in terms of what his harm was from not being allowed to pursue his career in the meanwhile. So to do this truncated approach and without regard to the merits at all seems to me not to work very well. It does leave us with a less complete picture than we would otherwise have. Does that mean that the decision that was made is incorrect or an abuse of discretion? I can't see that. It is not as false and as certainly true when you look at N. Yurt or the other. You looked on the merits and you thought, you know, there's no way he actually did this, and he was just railroaded. And as a judge, and the evidence shows me that he's surely going to win when he gets back to my court. Would you look at the irreparable harm differently? If the Court had made those factual findings, I might not be here appealing that issue. Should we remand it so the Court can make those factual findings? I don't think you should for reasons including that. I don't think that we would, at the point of having the administrative proceeding come. We've already lost two quarters. How many more quarters is a 79-year-old going to have? I don't know. There's nothing in the evidence as to his life expectancy. And of course, we all have only a limited amount of time. And you said that was going to be an evidentiary hearing. Is that right? The Faculty Judicial Board appeal is an evidentiary hearing? It includes evidence. That's my understanding. Meaning witnesses will testify? That's my understanding. Counsel is so represented, and he's actually going to be there. So I believe that's true. I have nothing further that should be affirmed. OK. Thank you very much. We'll give you a minute in rebuttal. Briefly, with regard to this evidentiary hearing, that's part of the problem at the university. We can't even call the key witnesses. The president, who made the decision to affirm this termination and suspension, is refusing to testify. And the Faculty Judicial Board won't make them testify. They've got no subpoena power, no rules of evidence. We can't call the witnesses that we want. So there's no fair hearing. At a minimum, we should have this case remanded for an evidentiary hearing so the judge, Judge Koh, would look at all the factors for a preliminary injunction. And with regard to this attempt to try and distinguish chalk, that whole case was about irreparable harm. This man had AIDS. He had a limited amount of time. They shot first and asked questions later. They suspended him. That was a suspension case. And he was moved to a different position. He wasn't fired. But this court still said that a preliminary injunction should be issued until we get all the facts. And that's my main point, Your Honor. And then I'll shut up. If Santa Clara can still fire him, if they can prove that he sexually harassed this woman, Ms. Zhang, who's no longer a student, there's not even a complainant. But even if they could prove it, they can terminate him. But if it's wrong, it's too late. He's already been suspended. He's already been harmed. And it's going to continue on and on. This thing will last. Thank you very much. Your time is up. I apologize. Thank you, Your Honor. The case of Heineken v. Santa Clara University is submitted, and we are in recess. Thank you both. Thank you, Your Honor. All rise. Thank you. This court, for this session, stands adjourned.
judges: Berzon, Bea, Berg